**Roseanne Federer SHARPE, a/k/a Roseanne Tarter, Appellant (Defendant/Petitioner),**

v.

**John R. SHARPE, Appellee (Plaintiff/Respondent).**

No. 94–142.

Supreme Court of Wyoming.

Sept. 12, 1995.

Robin Sessions Cooley (argued) and Mark A. Bishop of Burke, Woodard & Bishop, Cheyenne, for appellant.

Donna A. Murray and Henry F. Bailey, Jr. (argued) of Bailey, Pickering & Stock, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Appellant filed a petition for modification of child support payments in the district court alleging that application of the Wyoming child support guidelines would result in more than a twenty percent change per month in the father's child support obligation. Following a hearing, the district

court concluded that a deviation from the child support guidelines was warranted.

We reverse and remand.

## I. ISSUES

Appellant, the mother, presents four issues:

I. Whether Wyoming law allows the court to consider a lack of visitation and negative feelings between children and the non-custodial parent as a basis to deny or reduce the non-custodial parent's child support obligation?

II. Whether the facts in this case are sufficient to rebut the presumptive child support amount as unjust or inappropriate?

III. Whether it is against the public policy of our state to allow a reduction in child support based on limited visitation and negative feelings between children and the non-custodial parent?

IV. Whether the Appellant is entitled to attorney fees and court costs in bringing this action and in pursuing this appeal based on Wyoming Statute 20–6–306(c) and the Wyoming Rules of Appellate Procedure (W.R.A.P.) Rule 10.04?

Appellee, the father, rephrases the issues as:

I. Did the District Court abuse its discretion in applying Wyo.Stat. § 20–6–302(b) in its determination that the application of the presumptive child support would be unjust and inappropriate in this case?

II. As the trier of fact, did the District Court correctly determine the evidence was sufficient to rebut the presumptive child support amount as unjust or inappropriate?

III. Is Appellant entitled to attorney fees and costs under Wyo.Stat. § 20–6–306(c) and W.R.A.P. 10.04?

IV. Is Appellee entitled to attorney fees, costs and damages under W.R.A.P. 10.05?

## II. FACTS

At the time the parties were married on February 12, 1982, the mother had five children from a previous marriage. Within a year, the father adopted the children. The parties subsequently divorced in October 1991. A child custody and support agreement, incorporated into the divorce decree, granted the mother primary care, custody and control of the minor children, subject to the father's reasonable rights of visitation, and required the father to make child support payments of $125.00 per month per minor child.

On May 27, 1993, the mother filed a petition for modification of the child support agreement, alleging that a substantial change in circumstances had occurred after the court entered the divorce decree. The requested modification was based upon the support guidelines, specifically W.S. 20–6–306 (1994 Rpl.). The mother asserted that application of the guidelines would result in more than a twenty percent change per month.

Evidence introduced at a hearing revealed that the father's income had not changed significantly since the entry of the divorce decree. Additionally, the district court heard testimony from the father that he had tried to visit the children and to remain a part of their lives, as well as testimony regarding the negative feelings and animosity among the children and the father—most of which had arisen since the entry of divorce—including the fact that two of the children had told the father that he was "not their father," that he should "not contact" them, and that they "wanted nothing to do with him." At the time of this hearing, two of the children had become emancipated.

The district court found that although application of W.S. 20–6–306 would result in more than a twenty percent change in the father's child support obligation, the father had successfully rebutted the presumed child support under W.S. 20–6–302(b) (1994 Rpl.), concluding that the presumptive amount would be unjust and inappropriate because of the magnitude of the negative feelings and the extent of the alienation that had occurred between the father and the adoptive children. The district court therefore concluded that a deviation from the child support guidelines was warranted under W.S. 20–6–302(b)(xiii) and ordered the father to continue paying $125.00 per month per child until the first

child becomes emancipated; thereafter, support would increase to $180.00 per month per child until each became emancipated.

### III. DISCUSSION

#### A. Standard of Review

■ The district court has continuing jurisdiction to enforce or modify the terms of a child support obligation. *Pinther v. Pinther*, 888 P.2d 1250, 1253 (Wyo.1995); *Smith v. Smith*, 863 P.2d 624, 625 (Wyo.1993); *Nicholaus v. Nicholaus*, 756 P.2d 1338, 1340 (Wyo. 1988).

(a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. * * * Either parent may petition to enforce or revise the decree. The court which entered the decree has continuing subject matter and personal jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children require. ·

W.S. 20–2–113(a) (1994 Rpl.).

■ The district court has broad discretion in determining the proper amount of a child support award. *Pinther*, 888 P.2d at 1253; *Smith*, 863 P.2d at 625; *Roberts v. Roberts*, 816 P.2d 1293, 1296 (Wyo.1991). We will disturb the district court's ruling only upon a showing that the district court has abused its discretion. *Pinther*, at 1253; *Smith*, at 625; *Pauling v. Pauling*, 837 P.2d 1073, 1080 (Wyo.1992). Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law. *Cranston v. Cranston*, 879 P.2d 345, 348 (Wyo. 1994); *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993). Thus, the standard we apply is whether or not the court could have reasonably concluded as it did. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo.1993); *Parry v. Parry*, 766 P.2d 1168, 1171 (Wyo.1989).

#### B. Petition for modification of child support

■ Any party may petition for modification of a child support order by alleging

that the application of the support guidelines will result in a twenty percent change in the monthly support amount. W.S. 20–6–306; *Pinther*, 888 P.2d at 1253; *Smith*, 863 P.2d at 625; *Hasty v. Hasty*, 828 P.2d 94, 98 (Wyo.1992); *Roberts*, 816 P.2d at 1295. However, a twenty percent differential between the presumptive support according to the guidelines and the amount required according to an existing child support order, while it does require a hearing, does not control the ultimate determination with respect to modification. *Smith v. Smith*, 895 P.2d 37, 41–42 (Wyo.1995). Section 20–6–302 invokes the discretion of the trial judge in the modification hearing to weigh the enumerated thirteen factors and also the presence or absence of an agreement between the parties. *Id.* at 42.

■ A new, narrow rule regarding the petitioner's burden of proving a change in circumstances warranting modification of child support was recently announced in *Smith v. Smith*, 895 P.2d 37. There we held that when parties enter into a stipulation or agreement which is approved by the court and that stipulation or agreement includes a stipulated amount of child support which deviates from guidelines in existence at the time the judgment was entered, to justify modification of the child support order, the parties must show some material change of circumstance other than, and in addition to, the fact that a deviation exists. *Id.* at 41–42. This new rule applies only to cases in which the parties entered into a stipulation to child support amounts before the current guidelines were enacted but which deviated from the guidelines in existence at that time, and to stipulated child support amounts under the current guidelines which deviate from the current guidelines by twenty percent or more at the time the judgment was entered.

■ This policy is consistent with our view that child support agreements entered into by the parties are favored by the courts. *Smith*, 895 P.2d at 41 (*citing Beard v. Beard*, 368 P.2d 953 (Wyo.1962)); *Roberts*, 816 P.2d at 1296–97. However, even though a stipulation is an agreement between the parties, it is not a contract; and contract law has no place in the consideration of child support

agreements. *See Pauling,* 837 P.2d at 1077–78. The primary consideration regarding child support agreements is the best interests of the children—contract law cannot abrogate this controlling consideration. *See Broyles v. Broyles,* 711 P.2d 1119, 1125 (Wyo. 1985); *Roberts,* at 1296. When the parties agree to child support amounts, and the judgment incorporates such agreement, the district court adopts and incorporates the agreement based upon representations of the parties and based upon the finding that their agreement as to child support is in the best interests of the children. This rule also lends integrity to stipulations voluntarily entered into by the parties and adheres to the doctrine of finality of judgments which is supported by the doctrine of *res judicata. See Smith,* 895 P.2d at 40; *Roberts,* at 1296. This diminishes the needless relitigation of that which has already been decided by the district court.

Upon review of the record and the briefs on appeal, it is apparent that the only change of circumstance upon which the mother relies is the stipulated fact that the child support amount deviated from the current support guidelines by twenty percent or more. Because the hearing in this matter was conducted prior to the release of *Smith,* we remand this case to the district court to provide the mother the opportunity to prove any other material change of circumstances.

## C. *Deviation from the child support guidelines*

■ Because the father moved to rebut the presumptive child support amount, we address whether the district court erred in finding that deviation from the presumptive child support amount was warranted. The mother alleges that the district court abused its discretion in deviating from the guidelines and in basing the deviation on the negative feelings of the adoptive children and their wish not to have any visitation or contact with the father.

■ The support guidelines provide a means to calculate the amount of child support which is "rebuttably presumed to be the correct amount of child support to be awarded in any proceeding to establish or modify temporary or permanent child support amounts." W.S. 20–6–302(a); *Cranston,* 879 P.2d at 348; *Smith,* 863 P.2d at 625. Section 20–6–306(a), in conjunction with §§ 20–6–304(a) and 20–6–302, creates a rebuttable presumption that modification of a support obligation would be warranted when application of the guidelines would result in a twenty percent change in the monthly support award. *Pauling,* 837 P.2d at 1076. If application of the guidelines enumerated in § 20–6–304 would change the support amount by twenty percent or more, the court "shall consider there to be a change of circumstances sufficient to justify the modification of the support order." W.S. 20–6–306(a); *Pauling,* 837 P.2d at 1076.

■ However, deviation from the presumptive child support obligation is permitted when a finding is made by the district court that it would be unjust or inappropriate to follow the child support guidelines. W.S. 20–6–302(b); *Cranston,* 879 P.2d at 348; *Smith,* 863 P.2d at 625; *Pauling,* 837 P.2d at 1076; *Hasty,* 828 P.2d at 98–99; *Roberts,* 816 P.2d at 1295–96. "[S]trictly following the guidelines blindly would nullify the court's traditional discretion and would not be in the interest of justice in all circumstances." *Holtz v. State, ex rel. Houston,* 847 P.2d 972, 976 (Wyo.1993). "[C]hild support guidelines are neither absolute nor magical." *Morehead v. Morehead,* 811 P.2d 721, 723 (Wyo. 1991). "[A] presumptive standard is not a mandatory standard." *Cranston,* 879 P.2d at 349 (*citing Hasty,* 828 P.2d at 99).

[In] applying the guidelines established by § 20–6–304 when a party is seeking to modify an existing child support order, a court *may* deviate from the guidelines if it issues a finding on the record that application of the guidelines would be unjust or inappropriate in that particular case. § 20–6–302(b). We agree with the district court's finding:

Child support agreements made prior to the enactment of the statutory child support guidelines (§ 20–6–301 through § 20–6–306 W.S.) do not necessarily have to be changed simply because of the enactment of the statutory guidelines.

*Roberts,* 816 P.2d at 1295–96. *See also Pauling,* 837 P.2d at 1076–77.

[W]e hold that whenever a district court is faced with a determination of child support amounts, it is not bound to apply strictly the child support guidelines of W.S. 20–6–304(a). * * * Rather, the court should, in the exercise of its broad discretion in this area of the law, give full consideration to the statutory factors set forth in W.S. 20–6–302(b)(i)–(xiii)[.]

*Hasty,* 828 P.2d at 99–100.

In a modification proceeding, the court initially determines the amount of child support based upon the guidelines. That amount is rebuttably presumed to be correct. The court then, in the exercise of its discretion, may deviate from that amount if it finds it to be unjust or inappropriate. *Hasty,* at 98–99. To determine whether a particular level of presumptive child support would be unjust or inappropriate, the court may consider a legislatively open-ended, comprehensive list of factors enumerated in W.S. 20–6–302(b). *Cranston,* 879 P.2d at 348; *Pauling,* 837 P.2d at 1076.

At issue in this appeal is the district court's basis for deviating from the presumptive amount. The district court based its finding on W.S. 20–6–302(b)(xiii):

(b) A court may deviate from the presumptive child support established by W.S. 20–6–304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. * * * In determining whether to deviate from the presumptive child support established by W.S. 20–6–304, the court shall consider the following factors:

* * * * * *

(xiii) Other factors deemed relevant by the court.

The mother asserts that negative feelings on the part of the children and lack of visitation initiated by the children are not proper factors for the district court to consider and that such consideration is against public policy.

The district court is given broad discretion in considering "other factors" which it deems to be relevant to the proceeding. *Roberts,* 816 P.2d at 1296. We have continuously recognized that, "in the final analysis, child support decisions rest largely within the district court's exercise of discretion based upon all of the surrounding circumstances that exist in any particular case." *Hasty,* 828 P.2d at 97 (*citing Nuspl v. Nuspl,* 717 P.2d 341, 345 (Wyo.1986)). We have also stated that the enactment of W.S. 20–6–306(a) has not obviated the court's need to consider those factors it previously considered when determining whether child support is warranted, *i.e.,* the child's welfare, the paying parent's ability to pay, the recipient's spending habits, and all other surrounding circumstances. *Pauling,* 837 P.2d at 1077 (*citing Hasty,* 828 P.2d at 99).

However, a district court does not have boundless discretion in choosing what factors it will consider; it is bound by precedent and statutes of this state, as well as public policy. In *Broyles,* we recognized that the modern view is that the denial of visitation rights by the custodial parent or the child does not constitute a change in circumstances which justifies the reduction or termination of the noncustodial parent's support obligation.

Visitation is primarily for the benefit of the child, and ordinarily a support order must be paid even if the custodial parent wrongfully denies the non-custodial parent's right to visitation. The custodial parent's misconduct cannot destroy the child's right to support, nor may child support payments be used as a weapon to force a child's visitation with a non-custodial parent. The duty to support one's minor child is a continuing obligation. Entitlement to child support is not contingent upon visitation rights.

[*Hester v. Hester,*] 663 P.2d [727,] 728–729 [ (Okl.1983) ].

* * * * * *

In light of the foregoing authority from this court and other jurisdictions, we hold that the denial of visitation rights by either the custodial parent or the child does not constitute a change in circumstances justifying the reduction or termination of the

noncustodial parent's support obligation. A child's need for support and a parent's ability to pay are not related to questions concerning visitation. *The welfare of the child is a primary concern, and the duty of a noncustodial parent to support his or her child cannot depend on that parent's opportunity to exercise visitation rights.*

This conclusion is supported by the intent of the legislature as reflected in its adoption of the Revised Uniform Reciprocal Enforcement of Support Act (URESA), §§ 20–4–101 through 20–4–138, W.S.1977, in 1973. Section 20–4–123, W.S.1977, of that Act provides:

> * * * *The determination or enforcement of a duty of support owed to one (1) obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court.* (Emphasis added.)

Although this statute does not control the instant action by appellee to modify the divorce decree, the statute's policy with respect to the *independent nature* of support and visitation duties cannot be ignored.

*Broyles,* 711 P.2d at 1127–29 (emphasis added). Additionally, Justice Cardine, in his special concurrence in *Broyles,* stated:

> The rights of the parent and the child must coexist. If the child, of his own volition, determines not to visit the noncustodial parent, it seems that the child may have a right to those feelings. Neither the child nor the custodial parent should be punished for that choice. As the Michigan Court of Appeals said in *Henshaw v. Henshaw,* 83 Mich.App. 68, 268 N.W.2d 289, 291 (1978):
>
> > Affection is bestowed, not bought. Family relations cannot be regulated by the clock. Obviously, any coerced companionship the defendant might compel by a cutoff of child support would be utterly devoid of the sentiments of filial love and respect whose encouragement furnished the only admissible ground for visitation in the first place.

*Broyles,* at 1130 (Cardine, J., specially concurring).

■ We hold that lack of visitation and negative feelings between a noncustodial parent and child are not proper factors that a court may consider in determining whether to deviate from the presumptive support guidelines; such consideration is, therefore, an abuse of discretion. Visitation and child support are independent from one another; one may not be used to negate or reduce the duty relating to the other. In the case at bar, the district court abused its discretion when it determined that the magnitude of the negative feelings and the extent of the alienation that has occurred between the father and the children warranted a deviation from the presumptive child support.

### D. Attorney fees

The mother requests attorney fees under W.S. 20–6–306(c), which states:

> Notwithstanding any other provision of law, if the parties fail to agree that the presumptive child support amount under W.S. 20–6–304 is appropriate, the court shall order the party seeking to deviate from the presumptive child support amount to pay a reasonable attorney fee and court costs to the other party unless, after hearing the evidence and considering the factors contained in W.S. 20–6–302(b), the court deviates from the presumptive support amount.

As stated herein, pursuant to *Smith v. Smith,* 895 P.2d 37, the mother did not establish that modification of the stipulated child support was justified because she did not prove any other material change of circumstances. Because we are remanding this case for further proceedings, it would be premature to award attorney fees.

■ Additionally, the mother is not entitled to attorney fees under W.R.A.P. 10.04, as we are remanding this case to the district court so that the mother may have an opportunity to prove other material changes of circumstances. The father is not entitled to attorney fees under W.R.A.P. 10.05, as this appeal concerned review of the district court's discretionary rulings. *Mulkey–Yelverton v. Blevins,* 884 P.2d 41, 44 (Wyo.1994); *Bricker v. Bricker,* 877 P.2d 747, 751 (Wyo.

1994); *Smith*, 863 P.2d at 626; *Matter of Adoption of GSD*, 716 P.2d 984, 990 (Wyo. 1986).

## IV. CONCLUSION

Because the hearing in this matter was conducted prior to the release of *Smith v. Smith*, we remand this case to the district court to provide the mother with an opportunity to prove a material change in circumstances in addition to a twenty percent differential between the stipulated child support amount and the presumptive child support amount. Additionally, we hold that the district court abused its discretion in considering the lack of visitation and negative feelings and alienation among the father and the children as factors warranting deviation from the presumptive child support.

Reversed and remanded for further proceedings.